IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF:<br>MCK Millennium Centre Parking, LLC,<br>    Debtor. | Case No. 12-42646<br>Chapter 7<br>Judge: Jacqueline P. Cox |
| Gina B. Krol, Not individually but<br>as the duly assigned Chapter 7 Trustee,<br>    Plaintiff,<br>v.<br>Key Bank National Association, individually<br>and as successor by merger to Key Bank<br>Real Estate Capital Markets, Inc. d/b/a Key<br>Bank Real Estate Capital; and Wells Fargo<br>Bank, N.A., as successor trustee to LaSalle<br>Bank N.A., for the Registered Holders of<br>Merrill Lynch Mortgage Trust 2005-MKB2<br>Commercial Mortgage Pass-Through<br>Certificates, Series 2005-MKB2;<br>    Defendants. | Adversary No. 14-00392 |

## FIRST AMENDED COMPLAINT TO AVOID FRAUDULENT AND PREFERENTIAL TRANSFERS

NOW COMES Plaintiff Gina B. Krol, not individually but as the duly appointed Chapter 7 trustee ("Plaintiff") in the matter of *In re: MCK Millennium Centre Parking, LLC* ("Debtor"), by and through her attorneys, Cohen & Krol and Freeborn & Peters LLP, and for her First Amended Complaint ("Complaint") against Defendants Key Bank National Association, individually and as successor by merger to Key Bank Real Estate Capital Markets, Inc. d/b/a Key Bank Real Estate Capital ("Key") and Wells Fargo Bank, N.A., as successor trustee to LaSalle Bank N.A., for the Registered Holders of Merrill Lynch Mortgage Trust 2005-MKB2 Commercial Mortgage Pass–Through Certificates, Series 2005-MKB2 ("Trust," and together with Key, "Defendants"), to avoid fraudulent transfers of property pursuant to Sections 548 and 550 of the Bankruptcy Code and Illinois Code of Civil Procedure 740 ILCS 460/1 *et seq.*, and

preferential transfers pursuant to Sections 547 and 550 of the Bankruptcy Code, alleges and states as follows:

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334, as the Complaint arises out of, and is related to, the Chapter 7 bankruptcy case of MCK Millennium Centre Parking, LLC, administered under case number 12-42646, pending before the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Case").

2. This Complaint is a core proceeding pursuant to 28 U.S.C. §57(b)(2)(A) and (H).

3. Venue for this Complaint is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1409(a).

4. The Debtor filed for Chapter 7 relief under the United States Bankruptcy Code on June 19, 2012 (the "Petition Date").

5. Gina B. Krol is the duly appointed and acting Chapter 7 bankruptcy trustee for the Debtor's estate.

6. Plaintiff has the duty, authority and standing to bring this Complaint pursuant to Section 704 of the Bankruptcy Code.

7. At all relevant times, Defendant Key Bank National Association is a national banking association with its principal place of business in Cleveland, Ohio, which is authorized to do business in Illinois.

8. At all relevant times, Key Bank Real Estate Capital Markets, Inc. d/b/a Key Bank Real Estate Capital was an Ohio corporation. On information and belief Key Bank Real Estate Capital Markets, Inc. was a wholly-owned subsidiary of Key Bank National Association and ceased to exist after it merged into Key Bank National Association in 2013. Key Bank National

Association is successor by merger to Key Bank Real Estate Capital Markets, Inc. Key Bank National Association and Key Bank Real Estate Capital Markets, Inc. will be referred to together herein as "Key."

9.  Wells Fargo Bank, N.A., is a national banking association which is successor trustee to LaSalle Bank N.A., for the Registered Holders of Merrill Lynch Mortgage Trust 2005-MKB2 Commercial Mortgage Pass-Through Certificates, Series 2005-MKB2, which is a CMBS trust. It shall be referred to herein as the "Trust."

10. The Debtor initially filed a voluntary petition under Chapter 11 of Title 11 ("Bankruptcy Code"), and pursuant to Bankruptcy Code Sections 1107(a) and 1108 the Debtor operated its businesses and managed its financial affairs as a debtor in possession.

11. On September 24, 2012, upon motion of secured creditor United Central Bank, the Court appointed Gina B. Krol to be Chapter 11 trustee for the Debtor, thereby taking the Debtor out of possession and placing their assets and business under the control of the Plaintiff. On motion of Gina B. Krol this proceeding was converted to one under Chapter 7 on September 10, 2013. Gina B. Krol was appointed as Chapter 7 trustee of the Debtor's estate on September 11, 2013.

12. According to the List of Equity Security Holders filed by the Debtor in the Bankruptcy Case, Cataldo Family Enterprises LLC ("CFE") owns a 25% interest in the Debtor, State Street Investment ("SSI") owns a 50% interest in the Debtor, and William Marovitz ("Marovitz") owns a 25% interest in the Debtor (CFE, SSI, and Marovitz are collectively referred to herein as the "Equity Holders").

13. Joseph Koshabe ("Koshabe") owns 100% of the equity interest in SSI. SSI is the managing member of the Debtor.

14. On July 24, 2012, the United States Trustee's ("UST") office held a meeting of creditors pursuant to 11 U.S.C. §341 (the "341 Meeting") in the Bankruptcy Case. Koshabe testified at the 341 Meeting on behalf of the Debtor.

15. At the 341 Meeting, Koshabe testified that the Equity Holders own MCK Millennium Centre Retail, LLC ("Retail").

16. Retail is an insider of the Debtor.

17. Prior to June 19, 2008, the Trust made a loan to Retail.

18. On information and belief, Key was the Trust's agent/master servicer with respect to the Trust's loan to Retail.

19. As alleged in detail below, prior to the Petition Date the Debtor transferred the 90 Day Transfers, the Two Year Transfers and the Four Year Transfers described on Exhibits A-C hereto totaling over $5 million (together, the "Transfers") to Key. True and correct copies of the cancelled checks for each of the Transfers are attached hereto as Exhibit D.

20. Key exercised dominion and control over the Transfers received from the Debtor before transferring some or all of said amounts to the Trust.

21. On information and belief, pursuant to its agreement with the Trust, Key had the right to exercise dominion and control over the Transfers received from the Debtor including but not limited to the right to invest the money in its discretion (within a range of permitted investments), keep the investment income from said investments and the obligation to repay the losses from said investments, make P&I and servicing advances and reimburse itself for such advances plus interest, and deduct its fees from the funds in its possession and control.

22. On information and belief, pursuant to its agreement with the Trust, Key retained an interest in the Transfers received from the Debtor in the form of its outstanding fees,

unreimbursed advances and an Excess Servicing Strip. On information and belief, pursuant to its agreement with the Trust, Key had discretion to waive borrowers' obligations under their loan agreements to pay interest on loans being prepaid and default charges.

23. On information and belief, Key transferred some or all of the Transfers to the Trust.

24. At all times relevant to this Complaint, the Trust was a creditor of Retail.

25. At no time relevant to this Complaint were the Defendants a creditor of the Debtor.

26. The Transfers the Debtor made to the Defendants were applied against the Trust's loan to Retail, not the Debtor. The Debtor was not an obligor or guarantor on the Trust's loan to Retail.

27. One or more of the Equity Holders of the Debtor, or the persons or entities controlling them, caused the Debtor to pay the debt of Retail, which was an insider of the Debtor.

28. The Debtor was insolvent during the period 2008 through the Petition Date.

29. During the period 2008 through the Petition Date, the Debtor's liabilities exceeded $11.5 million, including over $11.3 million that was owed to United Central Bank, its major secured creditor.

30. The Debtor's schedules filed in its bankruptcy case state that as of the Petition Date, the general unsecured claims against the estate totaled over $2.1 million.

31. The Court allowed the secured claim of United Central Bank in the amount of $14,719,211. Therefore, as of the Petition Date, the Debtor's liabilities were over $16.8 million.

32. The Debtor's federal tax returns for 2008 through 2011 state that the market value of Debtor's assets was less than $9 million.

33. Pursuant to a third-party appraisal, as of November 2009, the liquidation value of the Debtor's real property, its sole significant asset, was $8,450,000 - $8,975,000.

34. In 2013 the Trustee sold the Debtor's real property (its only significant asset) for $7,151,000. This sale was approved by the bankruptcy court.

35. The Debtor's schedules filed in its bankruptcy case state that the market value of its assets (other than the real property) was $35,403. Therefore, as of the Petition Date, the value of the Debtor's assets was approximately $7.2 million consisting of the Debtor's real estate and other assets.

36. The Debtor's balance sheet states that, as of December 31, 2010, Debtor's total liabilities were over $11.6 million and its total assets (excluding depreciation) were valued at approximately $10 million.

37. The Debtor's balance sheet states that, as of December 31, 2011, Debtor's total liabilities were over $11.7 million and its total assets (excluding depreciation) were valued at approximately $9.8 million.

38. The Debtor's balance sheet states that, as of March 31, 2012, Debtor's total liabilities were over $11.7 million and its total assets (excluding depreciation) were valued at approximately $9.8 million.

39. The Debtor's balance sheet states that, as of June 30, 2012, Debtor's total liabilities were over $12.9 million and its total assets (excluding depreciation) were valued at approximately $9.8 million.

40. During the period 2009 through the Petition Date, the Debtor was not paying its debts as they came due including monthly mortgage loan debt service payments that were owed to United Central Bank.

## COUNT I
## AVOIDANCE OF FRAUDULENT TRANSFER - 11 U.S.C. §§ 548(a)(1)(B) & 550
## CONSTRUCTIVE FRAUD

41. Paragraphs 1 through 40 are realleged and set forth herein.

42. Between June 19, 2010 and the Petition Date, the Debtor transferred an aggregate amount of $2,213,942.06 to Key from the Debtor's bank account ending -9008 (collectively, the "Two Year Transfers"). The dates, amounts and check numbers of the Two Year Transfers are set forth in Exhibit A hereto and the cancelled checks are attached as Exhibit D hereto.

43. On information and belief, between on or about June 19, 2010 and the Petition Date, Key transferred some or all of the Two Year Transfers to the Trust.

44. Each of the Two Year Transfers to Defendants qualifies as a "Transfer" as defined in Bankruptcy Code § 101(54).

45. The funds transferred were an interest of the Debtor in property.

46. The Debtor received no value in exchange for the Two Year Transfers and therefore it received less than reasonably equivalent value in exchange for the Two Year Transfers in that it had no obligations to the Defendants or to any third party that were reduced on account of said payments.

47. The Debtor was insolvent when the Two Year Transfers took place as set forth in detail above in paragraphs 28-40.

48. Retail was an insider of the Debtor and the Two Year Transfers were for the sole purpose of paying a debt that Retail owed to the Defendants. The Two Year Transfers were for the benefit of Retail.

49. The Two Year Transfers were for the benefit of an insider.

7

50. The Two Year Transfers either (a) were made while the Debtor was insolvent or caused the Debtor to become insolvent as a result of each Two Year Transfer; (b) were made while the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonable small capital; and/or (c) were made while the Debtor intended to incur, or believed that it had incurred debts that it would not be able to pay as they became due.

51. The Two Year Transfers should be avoided pursuant to Section 548 of the Bankruptcy Code and should be recovered by the Trustee for the benefit of this Estate and its creditors pursuant to Section 550(a) of the Bankruptcy Code.

52. United Central Bank is a creditor of the Debtor's bankruptcy estate and was a creditor of the Debtor at all times relevant to this Complaint.

WHEREFORE, Gina B. Krol, not individually but as the duly assigned Trustee respectfully requests that this Court avoid the Two Year Transfers from the Debtor to Defendants, pursuant to Sections 548 and 550 of the Bankruptcy Code; enter judgment against Defendants, in the amount of the value of said transfers, plus costs, and interest on said judgment from the date of filing of this complaint pursuant to 28 U.S.C. § 1961; and grant any further and other relief that this Court deems just and equitable.

## COUNT II
## AVOIDANCE OF FRAUDULENT TRANSFER - 11 U.S.C. §§ 548(a)(1)(A) & 550

53. Paragraphs 1 through 40 are realleged and set forth herein.

54. Between June 19, 2010 and the Petition Date, the Debtor transferred an aggregate amount of $2,213,942.06 to Key from the Debtor's bank account ending -9008 (collectively, the "Two Year Transfers"). The dates, amounts and check numbers of the Two Year Transfers are set forth in Exhibit A hereto and the cancelled checks are attached as Exhibit D hereto.

8

55. On information and belief, between on or about June 19, 2010 and the Petition Date, Key transferred some or all of the Two Year Transfers to the Trust.

56. The Debtor made the Two Year Transfers with the actual intent to hinder, delay or defraud its creditors.

57. Retail was an insider of the Debtor and the Two Year Transfers were for the sole purpose of paying a debt that Retail owed to the Defendants. The Two Year Transfers were for the benefit of Retail.

58. The Two Year Transfers were for the benefit of an insider of the Debtor.

59. The Debtor concealed the Two Year Transfers by not disclosing them to its creditors.

60. Before some or all of the Two Year Transfers were made, the Debtor had been sued or threatened with suit by one or more creditors.

61. The Debtor transferred substantially all of its unencumbered assets, from time to time, when making the Two Year Transfers, often draining the Debtor's operating account.

62. The Debtor received no value at all and therefore it received less than reasonably equivalent value in exchange for the Two Year Transfers.

63. The Debtor was insolvent at the time of the Two Year Transfers or became insolvent shortly after the Two Year Transfers were made as set forth in detail in paragraphs 28-40.

64. As described above in paragraphs 57 through 63, several badges of fraud exist that further support a finding that the Debtor caused the Two Year Transfers with the actual intent to hinder, delay, or defraud its creditors.

WHEREFORE, Gina B. Krol, not individually but as the duly assigned Trustee respectfully requests that this Court avoid the Two Year Transfers from the Debtor to Defendants, pursuant to Sections 548 and 550 of the Bankruptcy Code; enter judgment against Defendants, in the amount of the value of said transfers, plus costs, and interest on said judgment from the date of filing of this complaint pursuant to 28 U.S.C. § 1961; and grant any further and other relief that this Court deems just and equitable.

## COUNT III
## AVOIDANCE OF FRAUDULENT TRANSFER – 740 ILCS 160/5(a)(2) CONSTRUCTIVE FRAUD (MADE APPLICABLE THROUGH 11 U.S.C. § 544(b)(1))

65. Paragraphs 1 through 40 are realleged and set forth herein.

66. Between June 19, 2008 and the Petition Date, the Debtor transferred an aggregate amount of $4,320,527.65 to Key from the Debtor's bank account ending -9008 (collectively, the "Four Year Transfers"). The dates and amounts of the Four Year Transfers are set forth in Exhibit B hereto and the cancelled checks are attached as Exhibit D hereto.

67. On information and belief, between on or about June 19, 2008 and the Petition Date, Key transferred some or all of the Four Year Transfers to the Trust.

68. Each of the Four Year Transfers qualify as a 'Transfer' as defined in 740 ILCS 160/2.

69. The money transferred was an asset of the Debtor as defined in 740 ILCS 160/2.

70. The Debtor received no value in exchange for the Four Year Transfers and therefore it received less than reasonably equivalent value in exchange for the transfer of the Debtor's property to Defendant.

71. The Four Year Transfers took place within four years prior to the Petition Date.

10

72. Retail was an insider of the Debtor and the Four Year Transfers were for the sole purpose of paying a debt that Retail owed to the Defendants. The Four Year Transfers were for the benefit of Retail.

73. The Four Year Transfers were to the benefit of an insider.

74. The Debtor was insolvent when the Four Year transfers took place as set forth in detail above in paragraphs 28-40.

75. The Debtor (i) was insolvent on the dates it made each of the Four Year Transfers or became insolvent as a result of each of the Four Year Transfers; (ii) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction at the time of the Four Year Transfers; and/or (iii) intended to incur, or believed or reasonably should have believed it would incur, debts beyond his ability to pay as they became due.

76. United Central Bank is a creditor of the Debtor's bankruptcy estate and was a creditor of the Debtor at all times relevant to this Complaint.

WHEREFORE, Gina B. Krol, not individually but as the duly assigned Trustee respectfully requests that this Court avoid the Four Year Transfers from the Debtor to Defendants, pursuant to 740 ILCS 160/1 *et seq.*, made applicable through 11 U.S.C. § 544(b)(1); enter judgment against Defendants, in the amount of the value of said transfers, plus costs, and interest on said judgment from the date of filing of this complaint pursuant to 735 ILCS 5/2-1303; and grant any further and other relief that this Court deems just and equitable.

## COUNT IV
## AVOIDANCE OF FRAUDULENT TRANSFER – 740 ILCS 160/6(a) CONSTRUCTIVE FRAUD (MADE APPLICABLE THROUGH 11 U.S.C. § 544(b)(1))

77. Paragraphs 1 through 40 are realleged and set forth herein.

78. Between June 19, 2008 and the Petition Date, the Debtor transferred an aggregate amount of $4,320,527.65 to Key from the Debtor's bank account ending -9008 (collectively, the "Four Year Transfers"). The dates, amounts and check numbers of the Four Year Transfers are set forth in Exhibit B hereto and the cancelled checks are attached as Exhibit D hereto.

79. On information and belief, between on or about June 19, 2008 and the Petition Date, Key transferred some or all of the Four Year Transfers to the Trust.

80. Each of the Four Year Transfers qualify as a 'Transfer' as defined in 740 ILCS 160/2.

81. The Four Year Transfers are fraudulent because one or more of the Debtor's creditors' claims arose prior to the dates of the Four Year Transfers; the Four Year Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the transfers, and the Debtor was insolvent at the time or became insolvent as a result of each of the Four Year Transfers.

82. United Central Bank is a creditor of the Debtor's bankruptcy estate and was a creditor of the Debtor at all times relevant to this Complaint.

WHEREFORE, Gina B. Krol, not individually but as the duly assigned Trustee respectfully requests that this Court avoid the Four Year Transfers from the Debtor to Defendants, pursuant to 740 ILCS 160/1 *et seq.*, made applicable through 11 U.S.C. § 544(b)(1); enter judgment against Defendants, in the amount of the value of said transfers, plus costs, and interest on said judgment from the date of filing of this complaint pursuant to 735 ILCS 5/2-1303; and grant any further and other relief that this Court deems just and equitable.

## COUNT V
## AVOIDANCE OF FRAUDULENT TRANSFER – 740 ILCS 160/5(a)(1) ACTUAL FRAUD (MADE APPLICABLE THROUGH 11 U.S.C. § 544(b)(1))

83. Paragraphs 1 through 40 are realleged and set forth herein.

84. Between June 19, 2008 and the Petition Date, the Debtor transferred an aggregate amount of $4,320,527.65 to Key from the Debtor's bank account ending -9008 (collectively, the "Four Year Transfers"). The dates, amounts and check numbers of the Four Year Transfers are set forth in Exhibit B hereto and the cancelled checks are attached as Exhibit D hereto.

85. On information and belief, between on or about June 19, 2008 and the Petition Date, Key transferred some or all of the Four Year Transfers to the Trust.

86. The Four Year Transfers constitute a transfer of an interest in the Debtor's property, and against the interests of its creditors.

87. The Debtor made the Four Year Transfers with the actual intent to hinder, delay, or defraud the Debtor's creditors, and constitutes an actual fraudulent transfer under Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160/5(a)(1)).

88. The Four Year Transfers were for the benefit of an insider of the Debtor, as defined in 740 ILCS 160/2(g). The Four Year Transfers were made to pay the debt that Retail, an insider of the Debtor, owed to the Defendant.

89. The Debtor concealed the Four Year Transfers by not disclosing them to its creditors.

90. Before some or all of the Four Year Transfers were made, the Debtor had been sued or threatened with suit.

91. The Debtor transferred substantially all of its unencumbered assets, from time to time, when making the Four Year Transfers, often draining the Debtor's operating account.

92. The Debtor received no reasonably equivalent value in exchange for the Four Year Transfers.

13

93. The Debtor was insolvent or became insolvent shortly after the Four Year Transfers were made as set forth in detail in paragraphs 28-40.

94. As described above in paragraphs 88-93, several badges of fraud, as codified in 740 ILCS 160/5(b), exist that further support a finding that the Debtor caused the Four Year Transfers with the actual intent to hinder, delay, or defraud its creditors.

95. United Central Bank is a creditor of the Debtor's bankruptcy estate and was a creditor of the Debtor at all times relevant to this Complaint.

WHEREFORE, Gina B. Krol, not individually but as the duly assigned Trustee respectfully requests that this Court avoid the Four Year Transfers from the Debtor to Defendants, pursuant to 740 ILCS 160/1 *et seq.*, made applicable through 11 U.S.C. § 544(b)(1); enter judgment against Defendants, in the amount of the value of said transfers, plus costs, and interest on said judgment from the date of filing of this complaint pursuant to 735 ILCS 5/2-1303; and grant any further and other relief that this Court deems just and equitable.

## COUNT VI
## AVOIDANCE OF PREFERENTIAL TRANSFER – 11 U.S.C. §§ 547(b)(4)(A) and 550 – PLED IN THE ALTERNATIVE TO COUNTS I-V

96. Paragraphs 1 through 24 and 26-40 are realleged and set forth herein. This Count VI is pled in the alternative to Counts I-V.

97. Retail is an insider of the Debtor within the meaning of § 101(31) of the Bankruptcy Code.

98. Between March 30, 2012 and the Petition Date, the Debtor transferred an aggregate amount of $278,485.14 to Key from the Debtor's bank account ending -9008 (collectively, the "90-Day Transfers"). The dates, amounts and check numbers of the 90-Day

Transfers are set forth in Exhibit C hereto and the cancelled checks are attached as Exhibit D hereto.

99. On information and belief, between on or about March 30, 2012 and the Petition Date, Key transferred some or all of the 90-Day Transfers to the Trust.

100. Each of the 90-Day Transfers constituted a transfer of an interest of the Debtor in property within the meaning of Section 101(54) of the Bankruptcy Code and relevant case law.

101. The 90-Day Transfers were made to pay a debt that Retail owed to the Defendants or to reduce a debt that the Debtor owed to Retail.

102. The 90-Day Transfers were made for the benefit of Retail.

103. Retail was a creditor of the Debtor to the extent that the Debtor was in possession or control of Retail's assets or funds.

104. The 90-Day Transfers were preferential transfers to the extent they were used to repay a debt the Debtor owed to Retail.

105. The 90-Day Transfers were in full or in part to repay an antecedent debt the Debtor owed to Retail.

106. The 90-Day Transfers were made while the Debtor was insolvent as described above in paragraphs 28-40.

107. The 90-Day Transfers were made within 90 days of the Petition Date.

108. The 90-Day Transfers enabled Retail to receive more than it would have received if (a) the Bankruptcy Case was a case under Chapter 7 of the Bankruptcy Code, (b) the transfers had not been made, and (c) Retail received payment of the debt the Debtor owes it provided by the provisions of the Bankruptcy Code.

WHEREFORE, Gina B. Krol, not individually but as the duly assigned Trustee respectfully requests that this Court avoid the 90-Day Transfers from the Debtor to Defendants, pursuant to Sections 547 and 550 of the Bankruptcy Code; enter judgment against Defendants, in the amount of the value of said transfers, plus costs, and interest on said judgment from the date of filing of this complaint pursuant to 28 U.S.C. § 1961; and grant any further and other relief that this Court deems just and equitable.

Respectfully submitted,

Joseph E. Cohen
Gina B. Krol
E. Philip Groben
COHEN & KROL
105 West Madison St., Ste. 1100
Chicago, IL 60602
(312) 368-0300

Steven M. Hartmann (ARDC # 6185428)
Shelly A. DeRousse (ARDC # 6274798)
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000

3231771v2

Gina B. Krol, Chapter 7 Trustee,
Plaintiff

By: /s/ Steven M. Hartmann
One of her Attorneys